SCANNED

# UNITED STATES DISTRICT COURT

FILED
BILLINGS, MT

## DISTRICT OF MONTANA

2006 DEC 27 PM 2 54

### BILLINGS DIVISION

PATRICK E. DUFFY, CLERK

BY _____

DEPUTY CLERK

|  |  |
|---|---|
| ASH-WILL FARMS, L.C., NICHOLAS )<br>W. GEMMA, and PATRICIA A. )<br>SCHMIDT, )<br> )<br>      **Plaintiffs,** )<br> )<br>      **v.** )<br> )<br>LEACHMAN CATTLE COMPANY, )<br>L.L.C., UNITED STATES OF AMERICA )<br>acting through the FARMERS HOME )<br>ADMINISTRATION, UNITED STATES )<br>DEPARTMENT OF AGRICULTURE, )<br>NORTH PLATTE FEEDERS, INC., )<br>LEXTRON, INC., VANN-ROACH )<br>CATTLE COMPANY, INC., CORINNE )<br>LEACHMAN, and MIDWEST AUTO )<br>PARTS DISTRIBUTORS, INC., )<br> )<br>      **Defendants.** ) | **JUDGMENT IN A CIVIL CASE**<br><br>**CV-05-44-BLG-RFC** |

___ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

_X_ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**JUDGMENT** is hereby entered in favor of the Third-Party Plaintiff, United States of America and Plaintiff Ash-Will Farms, L.C.

DATED: December 27, 2006

**Patrick E. Duffy**
**CLERK**

_Terri Devitt_

**DEPUTY CLERK**

—————

————————————

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| ASH-WILL FARMS, L.C., NICHOLAS W. GEMMA, and PATRICIA A. SCHMIDT, | ) ) ) ) | Case No. CV-05-44-BLG-RFC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| LEACHMAN CATTLE COMPANY, L.L.C., UNITED STATE OF AMERICA acting through the FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE, NORTH PLATTE FEEDERS, INC., LEXTRON, INC., VANN-ROACH CATTLE COMPANY, INC., CORINNE LEACHMAN, and MIDWEST AUTO PARTS DISTRIBUTORS, INC., | ) ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) ) ) | |

Pending before the Court are (1) the United States' Motion for Summary Judgment; (2)

Plaintiffs and Counterclaim Defendants Ash-Will Farms, Nicholas W. Gemma and Patricia

Schmidt's Cross-Motion for Summary Judgment; (3) Defendant Vann-Roach Cattle Company's

Cross-Motion for Summary Judgment; and (4) Defendants Leachmans' Motion for Summary

Judgment.

Page 1 of 23

PROCEDURAL HISTORY

Plaintiffs originally filed this present action in the Montana District Court, 13th Judicial

District, alleging foreclosure claims arising from the breach of a mortgage agreement.  Defendant

United States subsequently removed the case to Federal Court on March 23, 2005 pursuant to 28

U.S.C. § 1444.  Defendant United States on behalf of its agency, the U.S. Department of

Agriculture, Farm Service Agency ("FSA") has filed an Answer, Counterclaims, Cross-claims and

a Third-Party Complaint against co-defendants James H. Leachman, Corinne G. Leachman, and

Leachman Cattle Company ("L.L.C.") seeking judgment on certain promissory notes and a shared

appreciation agreement and to obtain a decree of foreclosure.

Defendants United States, Big Horn County and Yellowstone County have entered into

stipulations that both counties have a real property tax lien against the properties subject to

foreclosure which is in superior lien position to that of the United States.

Default Judgment has been entered against Defendants Midwest Auto Parts, Textron Inc.,

Leachman Cattle Co. and Vance Publishing Corporation.[1]  Disclaimers of interest have been filed

by Dallas Horton, Black Ranches and North Platte Feeders, Inc.[2]

FACTUAL BACKGROUND

On October 31, 1979, FSA loaned James and Corrine Leachman and Leachman Cattle Co.

("Borrowers") the sum of $1,754,500.00 in the form of an emergency loan.  The loan was

reamortized on November 9, 1989 in the sum of $1,963,811.34.  On January 8, 1993, the loan

---

[1]*See Docs. # 41, 42, 69, and 57 respectively.*

[2]*See Docs. # 63, 93, and 78 respectively.*

was once again reamortized and written down $772,890.18 to the sum of $1,554,368.76. In exchange for the write down, Defendants James H. Leachman, Corrine G. Leachman and Leachman Cattle Co. entered into a shared appreciation agreement with FSA.

On October 31, 1979, FSA also loaned James and Corrine Leachman and Leachman Cattle Co. the sum of $20,000 in the form of an emergency loan. The loan was reamortized on November 9, 1989 in the sum of $14,155.17. The loan was reamortized again on January 8, 1993 in the sum of $15,393.72.

As security for the above promissory notes and a shared appreciation agreement, Corrine and James Leachman, as general partner of Leachman Cattle Co. and in his individual capacity, executed a number of real estate mortgages on three separate tracts of land. The mortgages involved real properties located in Yellowstone and Big Horn County, Montana and are more particularly described in the Government's Answer, Counter-Claim and Third-Party Complaint, Exhibit 1. These mortgages were properly recorded with the Clerk and Recorder of the respective counties. These mortgages take a first priority lien position on all the real properties at issue.

The first property is the "Home Place" and is located in Big Horn County, Montana . The second property is the "Residence" located in Gregory Hills Subdivision in Billings, Montana. The third property is the known as the "Hair Pin" ranch and is located west of Billings. Title to the Residence and the Hair Pin ranch are held by the Leachmans. Title to the Home Place is held by Leachman Cattle Company, L.L.C.

James H. Leachman and Corrine Leachman signed all promissory notes, mortgages and the Shared Appreciation Agreement as borrowers in their individual capacity. James H.

Leachman signed all promissory notes, mortgages and the Shared Appreciation Agreement on behalf of Leachman Cattle Company, in his capacity as a partner.

_____James H. Leachman, Corrine Leachman and the Leachman Cattle Co. are in default under the terms of the FSA's promissory notes, mortgages and Shared Appreciation Agreement for failure to make timely installment loan payments, to pay real property taxes on the mortgaged property and to pay amounts due under the Shared Appreciation Agreement. The last payment made on the FSA's Promissory Notes was on June 8, 2001. The Leachman Borrowers failed to make the annual installment payment on the notes due on June 1, 2002 and failed to pay real property taxes. Borrowers also failed to pay the Shared Appreciation Agreement amounts due January 2003. As of February 9, 2005, the amounts owed to FSA by the Leachmans total $1,921,214.03, plus interest.

_____On October 1, 2001, Defendant James Leachman borrowed $322,319.07 from Ash-Will Farms. Leachman executed and delivered to Ash-Will Farms a promissory note dated October 1, 2001 ("Ash-Will Note"). Under the terms of the Ash-Will Note, Leachman was to pay all amounts due by October 1, 2003. Leachman failed to pay any of the amounts due and owing and is currently in default under the terms of the Ash-Will Note.

_____On October 31, 2001, Defendant Leachman borrowed $200,000 from Nicholas W. Gemma. Leachman executed and delivered to Gemma a promissory note dated October 31, 2001 ("Gemma Note"). Under the terms of the Gemma Note, Leachman was to pay all amounts due by October 31, 2003. Leachman failed to pay any of the amounts due and owing and is currently in default under the terms of the Gemma Note.

On October 31, 2001, Defendant L.L.C. borrowed $100,000 from Patricia A. Schmidt. Defendant James Leachman, on behalf of the L.L.C. executed and delivered to Schmidt a promissory note dated August 30, 2001 ("Schmidt Note"). Under the terms of the Schmidt Note, the L.L.C. was to pay all amounts due by August 30, 2002. The L.L.C. failed to pay any of the amounts due and owing and is currently in default under the terms of the Schmidt Note.[3]

As reflected in the settlement agreement in <u>Leachman Cattle Company, L.L.C. v. Houck, et al.</u>,[4] these Promissory Notes were credit/loans transactions and did not constitute equity investments in the L.L.C. To secure these Promissory Notes, Defendant James Leachman promised the Ash-Will Parties that he would execute a mortgage granting the Ash-Will Parties a security interest in certain real property. Leachman did finally draft and execute and deliver a Mortgage ("Ash-Will Mortgage") dated August 1, 2001 granting a security interest in certain real property to secure the payment of the Ash-Will Note, the Gemma Note, the Schmidt Note (referred collectively as the "Notes") and other promissory notes made payable to Rissington Cattle Company and Richard and Faye Mott.[5] Rissington and Mott have assigned their rights to Ash-Will and Gemma arising from the obligations due from Defendants Leachmans.

The date of the Ash-Will Mortgage is incorrect. The Mortgage was not executed until August 1, 2002. The dates of the Notes as referenced in the Mortgage are not all correct either. The Mortgage discusses Notes of "even date." Not all the Notes were of "even date." The Ash-

---

[3]The last three aforementioned Notes will hereafter be referred to as the "Ash-Will Notes" and the three Plaintiffs holding the Notes will hereafter be referred to as the "Ash-Will Parties."

[4]Cause No. DV-03-0026 and Cause No. DV-03-943, Montana Thirteenth Judicial Court, Yellowstone County. *Houck Declaration, ¶ 8, Exhibit C.*

[5]*Houck Declaration, ¶ 10, Exhibit D.*

Will Mortgage was recorded in the office of the Clerk and Recorder of Yellowstone County, Montana on the 30th Day of September, 2002. In the Settlement Agreement, Defendant Leachman Cattle L.L.C. acknowledges the validity of the Mortgage.[6] In that same Settlement Agreement, Leachman Cattle L.L.C. agreed to assist and cooperate with the Ash-Will Parties in foreclosing the Mortgage.[7]

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge this burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

---

[6]*Houck Declaration, ¶¶ 13-15, Exhibit C.*

[7]*Id.*

DISCUSSION

1.   ***United States' Motion for Summary Judgment***

Third-party Plaintiff United States moves for summary judgment on monies owed and foreclosure of its FSA Mortgages.   The United States correctly cites the law that in order to make a *prima facie* case for foreclosure, plaintiff must prove the following elements:

1.   The debt of defendants;
2.   Non-payment of the debt; and
3.   Present ownership of the debt by the complaining party.[8]

Here the Declaration of Vern Tesch (*Doc.# 81*) establishes that Defendants Leachmans did in fact borrow money from the United States as evidenced by signed promissory notes and a shared appreciation agreement.[9]   Moreover, it is undisputed that this debt is still unpaid. The Tesch Declaration next establishes that Borrowers made their last voluntary payment on their loans on June 8, 2001.   Subsequent to that date, Borrowers went into default due to their failure to make their annual installment on their promissory notes, shared appreciation payment and failure to pay real property taxes on the pledged property.[10]   Again, the Parties do not dispute that the Borrowers defaulted on their promissory notes.   Lastly, from this Court's review, these promissory notes and appreciation agreement have not been transferred nor assigned by the

---

[8]Farm Credit Bank of Spokane v. Hill, 879 P.2d 1158, 1161 (Mont. 1993); First Nat'l Bank of Albuquerque v. Quinta Land and Cattle Co., 779 P.3d 48, 50 (Mont. 1989).

[9]*Id.* at ¶¶ *3-5, 7.*

[10]*Id.* at ¶ 9.

United States. Neither the Borrowers nor the other Parties in this case dispute that the United States has met these elements.

Borrowers James and Corrine Leachman claim that they are not individually liable for the debt due on the promissory note and the shared agreement. They contend that they only guaranteed the debt rather than having borrowed the debt outright. However, in looking at the four corners of the promissory notes and appreciation agreement, this Court finds Borrowers' claim to be without merit.

The relevant language in both Promissory Notes state that "FOR VALUE RECEIVED, the undersigned Borrower(s) and any co-makers jointly and severally promise to pay to the order the United States of America . . . the principal sum of . . ." Further, the last page of each note has the signature of James and Corrine Leachman as the "Borrower."[11] The reamortizations of the Notes reflect the same language and has the signatures of the Leachmans as the borrowers.[12] Additionally, other than unsupported assertions, Borrowers do not cite to any specific portions of the promissory notes that contain "guaranty" language.

Corrine and James Leachman contend that they purchased the Residence and the Hair Pin Property with their own money and not with funds gained from Leachman Cattle Company. The Leachmans contend that they pledged both properties as security only when they were required to do so by FSA in order to obtain a write down on the primary FSA loan. Regardless, this Court notes the record reflects that they did pledge these properties to the FSA under the mortgage agreements.

---

[11]*UNITED STATES' THIRD-PARTY COMPLAINT, Exhibits 2 & 5.*

[12]*Id., Exhibits 3 & 4.*

For the foregoing reasons, this Court finds that the United States has established a *prima facie* case for foreclosure on their mortgages. Therefore, Defendant and Third-Party Plaintiff United States' Motion for Summary Judgment is GRANTED.

Regarding the order of foreclosure, the United States informs the Court that it has no preference regarding the order the sale so long as its debts are fulfilled. Defendants Leachmans ask that the Home Place be foreclosed first. They contend that the proceeds from this sale will pay FSA in its entirety. In the event that the proceeds from the Home Place do not cover the entire FSA indebtedness, the Leachmans ask this Court to order the sale of the Hair Pin property next. They ask that the Hair Pin property be sold in parcels only to the extent necessary to pay the remaining monies owned to FSA.

However, this Court will first proceed with discussion of the remaining summary judgment motions and save discussion of the order of foreclosure for the conclusion of this opinion.

2.    ***All other Summary Judgment motions***

The remaining summary judgment motions are (1) Plaintiffs and Counterclaim Defendants Ash-Will Parties' Cross-Motion for Summary Judgment; (2) Defendant Vann-Roach Cattle Company's Cross-Motion for Summary Judgment; and (3) Defendants Leachmans' Motion for Summary Judgment. As these three remaining motions are intertwined, they will be discussed together.

As noted earlier, the "Ash-Will Parties" include Plaintiffs and Counterclaim Defendants Ash-Will Farms, L.C., Nicolas Gemma, and Patricia Schmidt. Presently the Ash-Will Parties are seeking judgment on their promissory notes and foreclosure of the mortgage securing said notes.

They contend that they loaned Defendant Leachman Cattle Company approximately $622, 319.07 for use in its cattle operation. The Ash-Will Parties have a mortgage on the Home Place

The Ash-Will Parties concede that the United States has a superior interest in the properties and that they have a right to seek foreclosure subject to the Ash-Will's request regarding the marshaling of assets. As to the interests of all other persons or entities in the properties, the Ash-Will Parties contend that those interests are subordinate to their previously recorded mortgage. The Ash-Will Parties have filed the present cross-motion for summary judgment because the United States does not have a mortgage interest in Ash-Will Parcels II, III and V. In the event that the sale of the properties does not satisfy the amounts owed to the Ash-Will Parties, they seek a deficiency judgment against Defendant James Leachman.

Defendants argue that the mortgage used to secure the promissory notes is invalid. As noted earlier, the Ash-Will Mortgage was drafted, executed and delivered to the Ash-Will Parties, Rissington Cattle Company and the Motts a Mortgage dated August 1, 2001 granting a lien on certain of Defendants Leachmans real property.[13] The date of the Mortgage is incorrect. The Mortgage was in fact not executed until August 1, 2002. It was recorded in the Clerk and Recorder's Office of Yellowstone County and Big Horn County on September 30, 2002 and October 14, 2005 respectively.

The Mortgage at issue defines an "Event of Default", as:

Default on the punctual payment of any payment of money required to be made pursuant to any one of the Notes, or in any payment of money to be made pursuant

---

[13]As noted earlier, Rissington Cattle Company and the Motts have assigned their rights under the mortgage to the Ash-Will Plaintiffs.

to this Mortgage, or any other instrument securing the Notes.[14]

In establishing a *prima facie* case for foreclosure, Plaintiffs rely on the same case law as the Government. As noted earlier, Defendant James Leachman executed and delivered three Promissory Notes to the Ash-Will Parties. Defendants do not dispute that these debts exist.[15] Nor do Defendants dispute that Defendants Leachmans did not pay on the debt or that Plaintiffs are not owners of the debt.[16] Given that non-payment of the Notes and the language in the Mortgage, Plaintiffs contend that they have established a *prima facie* case for foreclosure and, therefore, the real property should be sold and the proceeds applied to the debt.

Defendant Vann-Roach's Cross-Motion for Summary Judgment mirrors many of the Leachman's arguments. Like the Leachmans, Vann-Roach contends that the Ash-Will Parties' Mortgage is invalid because it does not state an amount secured. As such, Vann-Roach asks this Court to find the Mortgage invalid and therefore inferior to Vann-Roach's judgment lien.

In their Cross-motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, Defendants Leachman and Vann Roach contend that the Mortgage is invalid because the Mortgage (1) does not state the amount of the indebtedness on its face and (2) inaccurately references the promissory notes secured by the Mortgage.

---

[14]*PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS ("SUF"), ¶ 28.*

[15]The Court notes that in his Declaration, Defendant James Leachman states a number of times that he does not recollect whether certain key events occurred or not. However, as noted by Plaintiffs, failure to recollect does not create a genuine issue of fact. Fed. Election Comm'n v.Toledano, 317 F.3d 939, 950 (9th Cir. 2003).

[16]Farm Credit Bank of Spokane v. Hill, 879 P.2d 1158, 1161 (Mont. 1993); First Nati'l Bank of Albuquerque v. Quinta Land and Cattle Co., 779 P.3d 48, 50 (Mont. 1989).

Mont. Code Ann. § 71-1-204, entitled "**Form of Mortgage**," states in relevant part that:

A mortgage of real property *may* be made in substantially the following form:
    "This mortgage, made the .... day of ..., in the year ...., by A.B., of ....,
mortgagor, to C.D., of mortgagee, witnesseth:
    That the mortgagor mortgages to the mortgagee (here describe the
property), as security for the payment to him of ... dollars, on (or before)the ....
day of ...., in the year ..., with interest thereon (or as security for the payment of an
obligation, describing it, etc.). Mont. Code Ann. § 71-1-204.

Looking at Defendants' first claim, they contend that Mont. Code Ann. § 71-1-204
requires that a monetary amount must be included in the language of the mortgage.   In
considering the plain language of the statute, the Court notes that it reflects permissive rather than
mandatory language regarding the form of mortgages.  The statute does not require that the
amount be reflected in the mortgage.  As such, Defendants' argument that the Mortgage should
be invalidated in light  § 71-2-204 is meritless.

Moreover, Mont. Code § 70-21-302, states that, "[e]very conveyance of real property...
recorded as prescribed by law... is constructive notice of the contents thereof to... mortgagees."
Service Funding, Inc. v. Craft, 234 Mont. 431, 436 (1988).  Mont. Code § 70-21-305 states that,
"[a]n abstract of a conveyance ... recorded as prescribed by law ... shall have the same effect ... as
if the conveyance or encumbrance of real property had been acknowledged or proved and
certified and recorded as prescribed by law." Id.  None of the Defendants dispute that the Ash-
Will Mortgage was recorded correctly.  As such, they cannot claim that they were not on
constructive notice of its contents.  Service Funding, Inc. V. Craft, 234 Mont. 431 (1988).

Next, relying on  Mont. Code Ann. § 71-1-206, Defendants Leachmans and Vann-
Roach argue that the Ash-Will's Mortgage does not meet the minimum statutory requirements
regarding the form of mortgages relating to future advances.  Vann-Roach contends that the

relevant statute requires that "[t]he amount of future advances or total indebtedness that may be outstanding at any given time and subject to mortgage protection must be stated in the mortgage." Id.

In response, Plaintiffs argue that in looking at the intent of the Parties and the face of the Mortgage, it is clear that there is no future advance clause in it, nor was the possibility of future advances even contemplated. Ash-Will Plaintiffs contend that the Mortgage does not contain a future advance clause and, therefore, Defendants can not rely on that statute in attacking the Mortgage. Upon review and consideration, this Court agrees with Plaintiffs' arguments.

The first section of § 71-1-206 discusses the "amount of future advances or total indebtedness that may be *outstanding* . . . must be stated in the mortgage." The second section of the statute states that the lienholder will have priority on all future advances as if the money had been advanced at the time of the execution of the mortgage. Mont. Code Ann. § 71-1-206(2). The last section requires the lender to provide a statement of funds upon demand from a creditor.

The Montana Supreme Court in State v. Berger, 259 Mont. 364 (1993), held "[w]hile, in construing a statute, the wording of the body, and not that of the title controls, Eastman v. School District No. 1 (1947), 120 Mont. 63, 78, 180 P.2d 472, 479 (*overruled on other grounds*), resort may, nevertheless, be had to the title as an aid to construction." State v. Bruce (1938), 106 Mont. 322, 332, 77 P.2d 403, 408, *affirmed* 305 U.S. 577, 59 S.Ct. 465, 83 L.Ed. 363 (*overruled on other grounds*). Berger, 259 Mont. at 367.

From this Court's review, like its title, the wording in § 71-1-206 is unambiguous and deals solely with future advances. To impute certain language out-of-context, as Defendants would ask, from § 71-1-206 to § 71-1-204 would cause the insertion of additional terms where

none was intended.  Mont. Code Ann. § 1-1-101; *see also* <u>Glendive Medical Center, Inc. v.</u>

<u>Montana DPHHS</u>, 310 Mont. 156, 160 (2002).  Moreover, the Ash-Will Mortgage did not have

clause relating to future advances nor was there any outstanding indebtedness beyond the

referenced promissory notes.  Consequently, this Court concludes that Mont. Code Ann. § 71-1-

206 is inapplicable to this case.

 In addition, Defendants Leachmans were parties to the Ash-Will Mortgage agreement.

Therefore, they have actual knowledge of the debt owed to Plaintiffs and take subject to the

Mortgage.  <u>Angus v. Mariner</u>, 278 P. 996 (Mont. 1929).  "This rule is not altered by the fact that

the prior instrument is imperfect in itself, or is defectively executed, since notice of a prior

equitable title is sufficient in this behalf." <u>Id</u>.  Defendants Leachmans and Vann-Roach's Motion

for Summary Judgment on this ground is DENIED.


<u>INCORRECT DATES</u>

 Defendants argue that the Mortgage is invalid because (1) it states an incorrect execution

date and (2) it inaccurately describes the Notes to be secured.  The Mortgage was drafted by

Defendant James Leachman.  The pertinent part of the Mortgage that Defendants challenge states

that:

> **FOR PURPOSE OF SECURING**: (a) payment of each individual promissory
> note (the "Notes") of even date herewith between Mortgagor and each individual
> Mortgagee, which Mortgagees hereby agree shall have equal priority hereunder
> despite any differences in date of execution, principal balance or date of maturity; .
> . .[17]

In support, Defendants rely on <u>Poncelet v. English</u>, 243 Mont. 481, 482 (1990).  In that

---

[17]*HOUCK DECLARATION, Exhibit C*

case, the Montana Supreme Court concluded that, for recording and notice purposes, the mortgage in that case was invalid because it mischaracterized the legal description of the mortgaged property. The importance of an accurate legal description is undisputed. Without an accurate legal description, a subsequent lienholder would be unable to ascertain the extent of his priority over certain mortgaged property. As stated by the Poncelet Court , "[w]e cannot minimize the import of full compliance with proper legal descriptions for the purpose of constructive notice from recorded instruments." Id.

However, this Court concludes that Defendants' argument that inaccurate dates on promissory notes is comparable to an incorrect legal description overextends the holding in Poncelet. Here, even if the Notes were not correctly referenced in the Mortgage, subsequent lienholders were on constructive notice of their existence and were in a position to inquire as to the exact nature of those Notes.

The Parties did not cite, nor was this Court able to discover any cases on point. The Court does note that in many jurisdictions the rule applied states that "the true state or nature of an indebtedness secured by a mortgage need not be disclosed thereby, ... [and] the validity of a mortgage does not depend on the description or form of the debt, but rather on the existence of the debt that it is given to secure." 54A Am.Jur.2d Mortgages § 79 (1996). Further, as between the parties, "no exact degree of accuracy is required in the description of the debt secured by a mortgage, since it is sufficient if the debt secured is capable of identification and the amount thereof is ascertainable." Id. at § 80. Here, although the dates on the Notes and the date on the Mortgage may be incorrect, the recording of the Mortgage puts an interested party on notice of the existence of the Mortgage and Notes and is in a position to inquire as to the nature of the

matters.

As such, this Court concludes that the inaccurate dates of the Notes, as referenced in the Mortgage, and the incorrect date on the Mortgage does not invalidate the Mortgage.  No Party disputes that the Notes themselves reference legal debts.  No Party alleges that the Mortgage was not properly recorded.  No Party cites to cases that invalidate a Mortgage based on the incorrect referencing of the date of a legitimate note.[18]  Defendants Motion for Summary Judgment on this ground is DENIED.


EQUITY INTERESTS

Lastly, Defendants Leachmans argue that the Plaintiffs are not entitled to foreclosure on the Mortgage because they have converted their promissory notes into equity interests in Leachman Cattle Co., L.L.C.  In support, they cite to pleadings filed in the state court case where Plaintiffs made alternative arguments regarding their counterclaim which related to an alleged securities violation.  This practice is common and Defendants Leachman fail to cite to case law to establishing the mere argument as to constitute judicial admission.

In fact, Plaintiffs admit that they were offered the option to convert the loans into equity positions with the L.L.C.  However, they state that they never exercised that option.[19]  Other than citing to Plaintiffs' state court briefs, Defendants Leachmans present no evidence of Plaintiffs' alleged conversion of the Notes to equity interests.  To the contrary, in a settlement agreement

---

[18]Defendants do cite to numerous cases from other states, but those cases again relate to legal descriptions or other legal entities and are not on point to our present case.

[19]  *PLAINTIFFS' SUF, ¶ 21.*

Page 16 of  23

arising from a state court action, the L.L.C. itself, acknowledges that the Ash-Will Notes were credit/loan transactions and were not converted into equity positions in the L.L.C.[20] The pertinent language in that agreement states:

> The transaction pursuant to which LLC issued the GEMMA Note, the ASH-WILL Note, the other notes, and the MORTGAGE was a credit/loan transaction, and not an equity investment, notwithstanding that LLC also gave to GEMMA and ASH-WILL and option to convert the debt to equity.[21]

Given this agreement, this Court concludes that Defendants Leachmans cannot claim that the Ash-Will Notes were converted to equity interests. Defendants Leachmans' Motion for Summary Judgment on this ground is DENIED.

———

## MARSHALING OF ASSETS

As noted above, this Court has granted Defendant and Third-Party Plaintiff United States summary judgment on their foreclosure claim. Further, this Court has granted Ash-Will Plaintiffs summary judgment on their foreclosure claim. The only issue remaining is the marshaling of the Premises. As noted, the Premises consists of the Hair Pin Ranch, the Residence and the Home Place and their appraised values are $1,159,000, $318,000 and $1,727,932, respectively. [22]

The United States expresses no preference as to the order of foreclosure. The Ash-Will Parties acknowledge the Government's lien priority over the Premises. Regardless of this Court's ruling on the Mortgage, both the Ash-Will Parties and Vann-Roach ask that the order of

———

[20]*Id. at ¶ 21.*

[21]*Id. citing HOUCK DECLARATION, ¶ 8, Exhibit C.*

[22]*DECLARATION OF VERN TESCH, ¶¶ 14 - 16.*

Page 17 of 23

foreclosure be as follows: the Hair Pin Ranch, the Residence and then the Home Place.

In support, the Ash-Will Parties contend that this order is consistent with the marshaling statutes

requiring liens to be satisfied first from the parcels with fewest number of subsequent lien

holders. Moreover, they argue that this is the most equitable way of distributing the assets.

Under Montana statute, "[o]ther things being equal, different liens upon the same property

have priority according to the time of their creation."[23] However, where there are different liens

on different properties, parties must look to the marshaling statutes. Mont. Code Ann. § 31-2-

105 states:

> Where a creditor is entitled to resort to each of several funds for the satisfaction of
> his claim and another has interest in or is entitled as creditor to resort to some but
> not all of them, the latter may require the former to seek satisfaction from those
> funds to which the latter has no such claim, so far as it can be done without
> impairing the right of the former to complete satisfaction and without doing
> injustice to third persons.

Another relevant marshaling statute is Mont. Code Ann. § 71-3-115, which states that

> Where one has a lien upon several things and other persons have subordinate liens
> upon interests in some but not all of the same things, the person having the prior
> lien, if he can do so without risk of loss to himself or of injustice to other persons,
> must resort to the property in the following order, on the demand of any party
> interested:
> (1)     to the things upon which he has an exclusive lien;
> (2)     to the things which are subject to the fewest subordinate liens;
> (3)     in like manner inversely to the number of subordinate liens upon the same
>         thing; and
> (4)     when several thing are within one of the foregoing classes and subject to the same
>         number of liens, resort must be had:
>       (a)     first, to the things which have not been transferred since the prior lien was
>             created;
>       (b)    second, to the things which have been so transferred without a valuable
>             consideration; and
>       (c)     third, to the things which have been transferred for a valuable consideration

---

[23]Mont. Code Ann. § 71-3-113.

in the inverse order of the transfer.

Vann Roach and Ash-Will state that the FSA has liens on property that neither of them have: the Hair Pin and the Residence.  Therefore, pursuant to both marshaling statutes, these properties should be foreclosed first.  Vann Roach and Ash-Will Farms ask that the Home Place not be sold first, because to do so would benefit Defendant Corrine Leachman.  They contend that Ms. Leachman already has had the benefit of the Notes when they were first given and to allow her now to be given priority over them would be inequitable.[24]

Defendants Leachmans contend that marshaling of the assets is inappropriate.  They again argue that they are not the debtors; that the L.L.C. is the debtor; and that they were the guarantor of the FSA loan.  However, in granting summary judgment to FSA, this Court has already found Defendants Leachmans to be borrowers and that as executing parties on the promissory notes, they are jointly and severally liable.

In addition, citing Mont. Code Ann. § 70-32-201, Defendant Leachman states that he has filed a declaration of homestead on the Residence and, therefore, it is protected from forced sale.[25]  A homestead exemption may not exceed $100,000.  Mont. Code Ann. § 70-32-104.  The Court notes that the declaration was made on July 22, 2005.  There are Homestead exemptions.  Mont. Code Ann. § 70-32-202(3) states that

> The homestead is subject to execution or forced sale in satisfaction of judgments obtained: . . .
>
> (2)      on debts secured by mortgages on the premises, executed and acknowledged by

---

[24]Defendant Corinne Leachman has a judgment lien on the Hair Pin in the amount of $1,074,499.11.

[25]*LEACHMAN DECLARATION, EXHIBIT N.*

the husband and wife or by an unmarried claimant; or

(3)     on debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record.

Here, both FSA and the Ash-Will Parties have mortgage liens that were executed and filed before Leachman's Homestead declaration. As stated earlier, Defendants Leachmans owe FSA the amount of $1,921,214.03 plus interest as of February 9, 2005. Given that FSA's Mortgage and the Ash-Will Mortgage was executed and recorded before Defendant Leachman's homestead declaration, relying on Mont. Code Ann. § 70-32-202(3), this Court concludes that the homestead exemption does not apply.

The Court notes that the only Parties with mortgages on the Premises are the United States and the Ash-Will Parties. All remaining lienholders have judgment liens. If the Court were to follow the marshaling statutes, the order of foreclosure would be (1) the Hair Pin; (2) the Residence; and (3) the Home Place. In doing so, the Leachmans would lose their home. This Court finds such a outcome to be an injustice. Therefore, after having considered the marshaling statutes and balancing the equities, this Court orders the foreclosure of (1) the Hair Pin; and (2) the Home Place, respectively. For the purposes of this case, the Leachmans shall retain their Residence. In the event that the proceeds from the sale of the two properties is insufficient to satisfy any judgments, the FSA and the Ash-Will Plaintiffs may obtain a deficiency judgment on the difference.

## CONCLUSION

_____For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      The United States' Motion for Summary Judgment (*Doc. # 79*) is GRANTED;

Page 20 of 23

2.      The Ash-Will Plaintiffs' Motion for Summary Judgment (*Doc. #85* ) is GRANTED;

3.      The Defendant's Vann-Roach' Cross-Motion for Summary Judgment (*Doc. #96* ) is

        DENIED; and

4.      The Defendants Leachmans' Cross-Motion for Summary Judgment (*Doc.* # 101) is

        DENIED.

        IT IS FURTHER ORDERED that:

5.      the mortgages on certain real property, together with all improvements, tenements, rights,

        privileges, and appurtenances, be foreclosed and sold at public auction by the U.S.

        Marshal for the District of Montana in the following order: (1)  the Hair Pin; and (2) the

        Home Place.

        IT IS FURTHER ORDERED that the proceeds from the foreclosure sales are to be

applied in the following order:

6.      First to the United States Marshal's office for costs and expenses of sale;

7.      Any prior liens arising from real property taxes owed on the properties to Big Horn and

        Yellowstone Counties;

8.      The debts owed to the United States amounting to $1,921,214.03 as of February 9, 2005,

        with interest in the amount of $272.56 per day until the date of this Order;

9.      Any costs incurred by the United States arising from this litigation;

10.     The debts owed to the Ash-Will Parties in the following amounts:

        a.      the debt owed to Ash-Will Farm in the principal amount of $322,319.07 together

                with interest of $136,539.66 as of June 15, 2006 with additional interest in the

                amount of $79.48 per day until the date of this Order;

Page 21 of 23

b.    the debt owed to Nicholas W. Gemma in the principal amount of $200,000 together with interest of $83,243.84 as of June 15, 2006 with additional interest in the amount of $49.32 per day until the date of this Order;

c.    the debt owed to Patricia A. Schmidt in the principal amount of $100,000 together with interest of $41,621.92 as of June 1, 2006 with additional interest of $24.66 per day until the date of this Order;

d.    All costs of collection, including reasonable attorneys' fees and costs.

11.   In the event that the proceeds from the sale of the Home Place and the Hair Pin are insufficient to pay the amounts due, the expenses and costs of sale, the United States and the Ash-Will Parties  may have a deficiency judgment against James H. Leachman, Corrine Leachman and Leachman Cattle Co. L.L.C. or its successor-in-interest.

IT IS FURTHER ORDERED that:

12.   The Home Place and the Hair Pin are to be sold with the right of redemption as provided in Mont. Code Ann. §§ 25-13-801 through 25-13-825;

13.   All Defendants and any and all persons claiming under them, and all persons having liens subsequent and inferior to the lien of the United States' mortgages, either by mortgage, judgment, or decree, upon the real property described in the mortgages which are the subject of this foreclosure action, and their personal representatives and all persons claiming to have acquired any estate or interest in the real property, subsequent to the filing of this action, are forever barred and foreclosed of and from all equity of redemption and claim to the mortgages or premises;

14.   All Parties to this action are entitled to purchase at the sale and that the Purchaser at the

sale is entitled to immediate possession of the property subject only to the statutory right of redemption of the property as provided under Montana law;

15.     All remaining funds, if any, shall be deposited with the Clerk of Court and disbursed consistent with the priorities of the remaining lienholders.

IT IS FURTHER ORDERED that:

16.     the Clerk of Court shall enter Judgment in favor of the Third-Party Plaintiff United States and Plaintiffs Ash-Will Farms.

The Clerk of Court shall notify the Parties of the making of this Order.

DATED this 27th day of December, 2006.

_/s/ Richard F. Cebull_____
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE

cc:
Charles Hingle
Jason Ritchie
Scott Mitchell
Tom Towe
Victoria Francis
Bryan Wilson
Denise Linford
William Lamdin